**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GRISELDA GREEN,

                Plaintiff,

vs.                                                Case No. 3:05-cv-1106-J-MMH

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

                Defendant.
_____/

## OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's Complaint (Dkt. No. 1; Complaint) seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act. Administrative remedies have been exhausted, and the case is properly before the Court.

**I.    Background**

At the time of the administrative hearing, Plaintiff was forty-six years old and living in low income housing with her children. See Tr.[2] at 14, 404. She had completed high school and enrolled in some courses at a junior college. Id. at 404-05. Plaintiff previously worked as a cashier, kitchen food preparer, short order cook, harvest worker, telemarketer, motel

---

     [1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order of Reference (Dkt. No. 7).

     [2]     The transcript of Administrative Proceedings (Tr.) was filed on December 29, 2005, as an appendix to Defendant's Answer (Dkt. Nos. 4-5).

housekeeper, and day care worker. Id. at 14, 74, 100, 128.

Plaintiff filed an initial application for SSI on November 29, 2001. Id. at 13, 59-61. This application was denied on July 25, 2002. Id. at 13, 28, 31. On October 3, 2002, Plaintiff filed applications for Disability Insurance Benefits (DIB) and SSI. Id. at 13, 62-67. These applications also were denied on November 18, 2002. Id. at 13.[3]

Plaintiff protectively filed her most recent SSI application on February 12, 2003, alleging a disability onset date of October 16, 2001. Id. at 13, 68-73. She subsequently amended her disability onset date to December 25, 2001. Id. at 14, 403. In her disability reports, Plaintiff asserted that she is unable to work because she suffers from depression, back and leg pain, diabetes, high blood pressure, and a deteriorating bone disease. Id. at 14, 109, 136. Plaintiff indicated that, as a result of these conditions, she is unable to walk long distances or stand or sit for long periods of time. Id. at 109, 411-12. Plaintiff later testified that she stopped working due to irritation in her hips and the death of her spouse. Id. at 405.

After the application was denied initially, see id. at 29, 34-35, and on reconsideration, see id. at 30, 42-44, Administrative Law Judge (ALJ) Robert H. Isbell conducted a hearing on February 24, 2005, see id. at 27, 400. Plaintiff, who was represented by counsel, testified at the hearing as did a medical expert (ME), Dr. Richard Watts, and a vocational expert (VE), Robert Bradley. See id. at 400-432. On April 18, 2005, the ALJ denied Plaintiff's applications, finding that she was not disabled because she could perform a

---

[3] The record provides no indication that Plaintiff sought reconsideration of these applications.

significant number of sedentary jobs in the national economy, including the positions of telemarketer[4], surveillance systems monitor, and photograph mounter. See id. at 25-27. The Appeals Council denied Plaintiff's request for review on August 25, 2005. Id. at 6. Consequently, the Commissioner's decision became final. See Sims v. Apfel, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000). Plaintiff timely filed the Complaint on October 25, 2005. Complaint at 1.

**II.    Standard of Review**

"Disability" is defined in the Social Security Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry

---

[4] It appears that the ALJ inadvertently listed telemarketer as a position that Plaintiff was capable of performing instead of the position of dowel inspector. At the hearing, the ALJ noted that telemarketing was a stressful occupation and the VE testified that Plaintiff was not capable of performing this position given the residual functional capacity (RFC) found by the ALJ. Tr. at 429-30. The VE also testified that Plaintiff was capable of performing the position of dowel inspector and that there were approximately 30,000 dowel inspector positions available nationally, 1,000 positions available in the state of Florida, and 300 positions available in Jacksonville. Id. at 430. In the decision, the ALJ attributed these numbers to the position of telemarketer. Id. at 25. Notably, the VE did not testify as to how many telemarketing positions were available nationally, in Florida, or in Jacksonville. Id. at 429-30.

described in the regulations.[5]  See 20 C.F.R. § 416.920(a)(4)(i)-(v) (2004).  While the claimant generally bears the burden to prove that he or she is disabled, see id. § 416.912(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy.  See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam).  It does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per

---

[5]   The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

Step 1.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

Step 2.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

Step 3.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled.  If not, the next question must be resolved.

Step 4.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

Step 5.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.

See 20 C.F.R. § 416.920(a)(4)(i)-(v) (2004); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

curiam); see also Dyer, 395 F.3d at 1210; Foote, 67 F.3d at 1560.

The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), aff'd, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table decision); see also Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Ellison, 355 F.3d at 1275; cf. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). Substantial evidence has been defined as "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge, 150 F.3d at 1322); see also Ellison, 355 F.3d at 1275; Foote, 67 F.3d at 1560. It is more than a scintilla but less than a preponderance of evidence. See Dyer, 395 F.3d at 1210; Ellison, 355 F.3d at 1275. In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Foote, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards. See Moore, 405 F.3d at 1211; Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). The application of legal principles is closely scrutinized. See Doughty, 245 F.3d

at 1278.  Indeed, when the Commissioner has used incorrect legal standards or failed to explain her decision adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision.  See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.     Discussion

In this appeal, Plaintiff argues that the ALJ failed to properly evaluate the opinions of Dr. Wayne Rahming, Plaintiff's treating physician, and improperly gave controlling weight to the opinion of Dr. Richard Watts, a non-examining physician.  See Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Dkt. No. 9; Memorandum) at 10-15.  Plaintiff maintains that the opinions Dr. Rahming provided in a Physical Residual Functional Capacity Questionnaire (PRFC Questionnaire) regarding her impairments directed a finding of disability.  Id. at 11.  While Plaintiff acknowledges that the ALJ comprehensively summarized the medical evidence contained in the record and indicated that he was rejecting Dr. Rahming's opinion, in part, because it was inconsistent with some of that evidence, she contends that the ALJ failed to identify the specific evidence that he found to be inconsistent with Dr. Rahming's opinion.  Id. at 13.  Thus, relying on the Eleventh Circuit's opinion in Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam), Plaintiff asserts that the ALJ erred by not  "stat[ing] with particularity" his reasons for rejecting Dr. Rahming's opinion.  Memorandum at 13-14.  In support of her contention that the ALJ improperly gave controlling weight to the opinions of Dr. Watts, Plaintiff argues that the ALJ should not have relied on Dr. Watts' testimony because he did not have an opportunity to hear Plaintiff testify at the hearing and, in any event, his opinion is entitled to

little weight given his status as a non-examining physician. Id. at 14-15.

A treating physician's opinion must be given substantial weight unless there is good cause for not doing so. See Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 416.927(d)(2); see also Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1334 (M.D. Fla. 2003). Thus, the regulations provide that a treating physician's opinion regarding the nature or severity of an impairment will be given controlling weight when it is supported by clinical and diagnostic techniques and consistent with the other evidence in the record. See 20 C.F.R. § 416.927(d)(2). The Eleventh Circuit has found good cause to discount a treating physician's opinion when the opinion is not supported by the record, the evidence supports a contrary finding, the opinion is conclusory, or when the opinion is inconsistent with the doctor's own records. See Phillips, 357 F.3d at 1240-41; see also Edwards, 937 F.2d at 583. On the other hand, good cause "is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician." See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Moreover, "[t]he opinions of nonexamining reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." See id. (quoting Sharfarz, 825 F.2d at 280).

The ALJ may not simply substitute his judgment for that of a medical expert. See Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam); see also Marbury v. Sullivan, 957 F.2d 837, 840 (11th Cir. 1992) (per curiam) (Johnson, J., concurring specially) (stating "[a]n ALJ . . . abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians"). The ALJ is required to state the weight that he or she has given to the opinion of a treating physician, and if the opinion is discounted, the judge must clearly explain the reasons for giving the opinion less weight. See Phillips, 357 F.3d at 1241; Lewis, 125 F.3d at 1440; see also Morrison, 278 F. Supp. 2d at 1334. Failure to articulate reasons for rejecting or discounting a treating physician's opinion is reversible error. See Lewis, 125 F.3d at 1440. Moreover, if the judge ignores or fails to discount properly a treating physician's opinion, as a matter of law, such evidence must be accepted as true. See MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Once the judge determines that the treating source's opinion is not entitled to controlling weight, he or she will consider the following factors in determining the appropriate weight for the opinion: the length, nature, and extent of the treatment; the specialization of the doctor; and whether the opinion is supported by or consistent with the other evidence in the record. See 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (d)(3)-(6).

Dr. Rahming completed the PRFC Questionnaire on December 29, 2004. Tr. at 384-88. In the PRFC Questionnaire, Dr. Rahming stated that he was the supervising clinic physician at Trinity Community Hospital (Trinity) and had performed episodic consultations

with the Plaintiff. Id. at 369, 384.[6] He noted that, during her treatment at Trinity, Plaintiff had been diagnosed with "chronic low back pain, insulin managed diabetes (II), hypertension, asthma, and other[] [conditions]." Id.  Dr. Rahming further noted that Plaintiff suffered from "disabling, persistent low back pain" and "reduced exercise tolerance." Id.  However, he later opined that Plaintiff was capable of performing low stress jobs, namely, part time positions that require "minimal physical demands" such as the position of a telephone operator. Id. at 385.  Dr. Rahming concluded that Plaintiff could only sit or stand for one hour at a time and sit and/or stand/walk for approximately two hours in an eight-hour work day. Id. at 386.  He stated that Plaintiff must be able to alternate between sitting, standing, and walking and that Plaintiff would need to elevate her legs to hip level fifty percent of the time while performing a sedentary job. Id. at 386-87.  Dr. Rahming also opined that Plaintiff must be able to walk every sixty-minutes for five-minutes. Id.  Dr. Rahming's PRFC Questionnaire contained additional limitations indicating that Plaintiff could walk approximately one to two city blocks without resting or experiencing severe pain; occasionally lift less than ten pounds, rarely lift ten pounds, twist, stoop, or crouch; and never lift twenty pounds or more or climb ladders or stairs. Id. at 385-87.  He also determined that Plaintiff would sometimes need to take three to four unscheduled breaks during an eight-hour workday for ten to fifteen minutes each time and that, on average,

---

[6] In a medical record dated December 8, 2004, Dr. Rahming stated that Plaintiff had an extensive chart at Trinity due "to her ongoing patronage over the past several years, at least going back to the year 2000." Tr. at 369.  The undersigned notes that, while the record contains approximately thirty pages of medical documents relating to Plaintiff's treatment at Trinity, these documents are only from the years 2000 and 2004. Id. at 155-68, 369-88.

Plaintiff would be absent four days per month as a result of her impairments. Id. at 386-87.

At the hearing, Dr. Watts, who is board certified in internal medicine and cardiology, testified telephonically following the completion of Plaintiff's testimony. See id. at 415.[7] Dr. Watts stated that, although he had never examined or treated Plaintiff, he had reviewed the medical evidence contained in the record. Id. at 417. He opined that the evidence did not support the level of limitations expressed by Dr. Rahming in the PRFC Questionnaire. Id. Dr. Watts agreed with Dr. Rahming's findings that Plaintiff could perform a low stress job, walk one or two blocks without resting or experiencing severe pain, and stand for two hours in an eight-hour workday. Id. at 418. He also agreed that Plaintiff needed to be able to alternate between sitting and standing and that she might have a difficult time climbing. Id. However, Dr. Watts stated that he did not find any medical evidence in the record to support Dr. Rahming's opinions that Plaintiff could only sit for two hours in an eight-hour workday, needed frequent unscheduled breaks, could not carry twenty pounds, and would be absent four days a month from work. Id. Additionally, he indicated that he was most puzzled by Dr. Rahming's finding that Plaintiff's legs needed to be elevated to hip level for fifty percent of the time during an eight-hour workday, explaining that "[he] didn't have any information that helped to support [this finding]." Id. Dr. Watts opined that the sit/stand option would provide Plaintiff with an adequate opportunity to take a ten minute break from an uncomfortable

---

[7] It appears that the ALJ called Dr. Watts after Plaintiff completed her testimony. See Tr. at 415. As noted above, Plaintiff asserts that the ALJ erred by relying on Dr. Watts' testimony because Dr. Watts did not have an opportunity to hear Plaintiff's testimony at the hearing. See Memorandum at 15. Notably, Plaintiff, who is represented by the same counsel who was present at the hearing, did not raise this objection at the hearing. See id. at 400-432.

position. Id. While, Dr. Watts testified that, in general, his and Dr. Rahming's opinions regarding Plaintiff's abilities and limitations were "fairly close," he concluded, based on a review of the record, that Plaintiff had the physical and psychological ability to perform low stress, sedentary work consisting of simple repetitive tasks. Id. at 419-21.

In the decision, the ALJ stated that he had given "controlling weight" to the opinion of Dr. Watts, noting that Dr. Watts had reviewed Plaintiff's entire medical record and was board certified in internal medicine. Id. at 23. The ALJ further noted that Dr. Watts' opinion "is supported by objective medical findings and is consistent with the evidence of record when considered in its entirety." Id. He explained that he had only given great weight, rather than controlling weight, to the opinion of Dr. Rahming because that opinion was "inconsistent with the evidence of record when considered in its entirety." Id. Moreover, the ALJ stated that he had given more weight to Dr. Watts' opinion than Dr. Rahming's opinion because Dr. Watts "had the opportunity to review the entire medical evidence of record and is board certified in internal medicine." Id.

Upon review of the record, the undersigned concludes that the ALJ erred by giving controlling weight to the opinions of Dr. Watts, a nonexamining physician. As noted above, the ALJ explained that he was giving controlling weight to the opinion of Dr. Watts because, unlike Dr. Rahming, Dr. Watts had reviewed the entire medical record and was board certified in internal medicine. Id. at 23. The ALJ also decided to give controlling weight to the opinion of Dr. Watts because he found, after considering the record in its entirety, that it was Dr. Watts' opinion that was consistent with the evidence contained in the record. Id. However, under SSR 96-2p, an ALJ is only permitted to assign controlling weight to an

- 11 -

opinion expressed by a treating source. See SSR 96-2p. Indeed, SSR 96-2p explicitly provides that, "[a]lthough opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to 'controlling weight.'" Id. Thus, despite the rationale given by the ALJ for assigning controlling weight to the opinion of Dr. Watts, Dr. Watts' opinion was not entitled to controlling weight. Accordingly, this case is due to be remanded for reconsideration of the weight to be afforded to Dr. Watts' opinion.

As this case is due to be remanded, the undersigned cautions that the ALJ should be careful to discuss all of the opinions given by Dr. Rahming in the PRFC Questionnaire regarding Plaintiff's ability to do work-related activities. Notably, these responses meet the definition of a medical source statement provided by the Commissioner. See SSR 96-5p (defining a medical source statement "as a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings.") As such, the opinions expressed by Dr. Rahming in the PRFC Questionnaire "are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of [the claimant's] impairment(s)." Id. Social Security Ruling 96-5p cautions that these statements can contain several medical opinions and "it may be necessary to decide whether to adopt or not adopt each one." Id.

Based upon his evaluation of the medical evidence, the ALJ determined that Plaintiff had the RFC to perform sedentary work but was limited to low stress work and simple, repetitive tasks. Id. at 24. The ALJ further found that Plaintiff "can lift and/or carry 20

pounds occasionally and 10 pounds frequently." Id. In addition, the ALJ determined that Plaintiff "can sit at least 6 hours and stand/walk 2 hours in an 8-hour workday" and "must be able to sit and stand at will." Id. Given his determination that Plaintiff can sit at least six hours in an eight-hour workday and lift and/or carry twenty pounds occasionally and ten pounds frequently, see Tr. at 24, the ALJ implicitly rejected Dr. Rhaming's findings that Plaintiff can sit for two hours in an eight-hour workday, occasionally lift less than ten pounds, and rarely lift ten pounds, see id. at 386-87. In addition, the ALJ apparently accepted Dr. Rahming's opinion that Plaintiff can stand/walk two hours in an eight-hour workday and must be able to alternate between sitting and standing. Id. at 386. However, Dr. Rahming provided numerous opinions regarding other limitations, including Plaintiff's ability to (1) twist; (2) stoop; (3) crouch, and (4) climb. See id. at 387. Dr. Rahming also concluded that Plaintiff must be able to (1) elevate her legs to hip level fifty percent of the time; (2) walk every sixty minutes for five minutes;  and (3) take three to four unscheduled breaks during an eight-hour workday for ten to fifteen minutes each time. Id. at 386-87. He further determined that Plaintiff would be absent four days per month as a result of her impairments. Id. at 387. While the ALJ discussed each of these opinions in his decision, he did not explicitly accept or reject them. See id. at 13-24. On remand, the ALJ should state the weight he is affording the various opinions expressed by Dr. Rahming and explain his reasons for rejecting or accepting those opinions. See SSR 96-5p; see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding that the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."); Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985)

(noting that the court has previously held that an ALJ is required to "state specifically the weight accorded to each item of evidence and why he [or she] reached that decision.") (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).[8]

The Court further cautions that the ALJ should also clarify his basis for discounting Dr. Rahming's opinions if he continues to do so. Although one of the reasons stated by the ALJ for discounting Dr. Rahming's opinion, namely that it was contrary to the evidence in the record, see Tr. at 23, generally constitutes good cause to discount a treating physician's opinion, it is not clear what evidence in the record is inconsistent with some of the opinions expressed by Dr. Rahming. Thus, it is difficult for the Court to make a meaningful review for substantial evidence. See Morrison, 278 F.Supp.2d at 1336 (stating that to enable meaningful review, on remand the ALJ was to "identify specifically what evidence of record 'as a whole' was inconsistent" with the treating physician's opinion). Accordingly, on remand, the ALJ should consider identifying the evidence he relies on if he again concludes that Dr. Rahming's opinions are inconsistent with the record as a whole. Moreover, the ALJ is reminded that good cause cannot solely be provided by the contradictory opinion given by Dr. Watts. See Lamb 847 F.2d 698 at 703.

---

[8] The Court does not find that the ALJ ignored or improperly discounted the opinion of Plaintiff's treating physician, and, therefore, the Commissioner is not required to accept the opinions of Dr. Rahming as true. See MacGregor, 786 F.2d at 1053. Instead, the case is being remanded to clarify the weight the ALJ afforded to the opinions expressed by Dr. Rahming in the PRFC Questionnaire as the ALJ failed to do so in the decision. See Morrison, 278 F. Supp. 2d at 1334.

**IV.    Conclusion**

In accordance with the foregoing, it is hereby **ORDERED**:

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to (1) re-evaluate the opinions of Dr. Wayne Rahming and Dr. Richard Watts, explicitly state the weight these opinions are afforded, and explain why these opinions are accepted or rejected; and (2) conduct any other proceedings deemed appropriate.[9]

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of February, 2007.

*/s/ Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc3

Copies to:

Counsel of Record

---

[9] The undersigned notes that the record contains references indicating that Plaintiff used crack cocaine on numerous instances. See Tr. at 192, 255, 260, 268. On remand, the ALJ may wish to consider whether the medical evidence supports a finding that Plaintiff is addicted to crack cocaine and, if so, whether Plaintiff's crack cocaine addiction is a contributing factor to his determination that Plaintiff is disabled. See The Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997) (stating that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."); see also 20 C.F.R. § 416.935.